1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8   PHILIP A. HARRIS,                      )
                                           )
9                          Plaintiff,      )     Case No. C09-385-JLR-BAT
                                           )
10         v.                              )     **REPORT AND**
                                           )     **RECOMMENDATION**
11  MICHAEL J. ASTRUE, Commissioner of     )
    Social Security,                       )
12                                         )
                           Defendant.      )
13  _____)

14         Plaintiff Philip A. Harris seeks judicial review of the denial of his application for

15  disability insurance benefits and supplemental security income after a hearing before an

16  administrative law judge ("ALJ").  Plaintiff argues that the ALJ erred in (1) evaluating his

17  medically determinable severe impairments, (2) evaluating the medical opinions, (3) failing to

18  comply with the Appeals Council's remand order, and (4) determining plaintiff's residual

19  functional capacity.  For the reasons set forth below, the Court recommends that the

20  Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

21                       **I.  FACTUAL AND PROCEDURAL HISTORY**

22         Plaintiff, who is currently 49 years old, has a high school education.  Tr. 101, 114.  He

23  has past work experience as a dry cleaner and cook, and was last employed as an automotive oil

changer in 1997.  Tr. 109.  Dkt. 15 at 2.

On August 19, 2003, plaintiff applied for disability insurance benefits and supplemental security income benefits alleging disability as of May 1, 2003.  Tr. 97-100.  His application was denied initially and on reconsideration.  Tr. 82.  The ALJ held a hearing on March 22, 2006.  The ALJ's decision of September 7, 2006 found plaintiff not disabled.  Tr. 33.  On July 24, 2008, the Appeals Council vacated the ALJ's decision and ordered a remand.  Tr. 28-32.  In its remand order the Appeals Council directed the ALJ to evaluate the effects of a possible substance abuse disorder ("DAA"), consider the opinions of Dr. Anita Peterson, Ph.D. and Dr. Susan Hakeman, M.D., assess plaintiff's residual functional capacity with respect to past relevant work and evaluate new evidence.  *Id.* at 19.

The ALJ held a second hearing on May 5, 2008 and issued a decision on July 24, 2008 finding plaintiff not disabled.  Tr. 25.  On January 29, 2009, the Appeals Council denied review of that decision making it the Commissioner's final decision under 42 U.S.C. § 405(g).  Tr. 9.  Plaintiff now seeks judicial review of the ALJ's final decision.

## II.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since May 1, 2003, the alleged onset date.  Tr. 20.

At step two, the ALJ found plaintiff has the following severe impairments: anxiety disorder, personality disorder, and substance addiction disorder.  Tr. 20.

At step three, the ALJ found plaintiff  does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 21.

REPORT AND RECOMMENDATION – 2

The ALJ next found plaintiff has the residual functional capacity

> to perform the full range of physical work at all exertional levels, and to adequately perform the mental activities generally required by competitive, remunerative, unskilled work as follows: understand, remember and carry out simple activities (i.e. to maintain concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e. 8 hours a day, 5 days a week, or equivalent work schedule), within customary tolerance of employers' rules regarding sick leave and absence; and to make judgments commensurate with the functions of unskilled work, such as making simple, work-related decisions, responding appropriately to supervision, co-workers and work situations, and dealing with changes within a routine work setting. He should not deal with the general public as in cashiering or as a waiter. The incidental contact that may occur in a hotel/motel room cleaner job would not be precluded.

Tr. 22.

At step four, the ALJ found plaintiff is capable of performing his past relevant work as dry cleaner machine presser. Tr. 24.

At step five, the ALJ found plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2003 through the date of the decision. Tr. 25.

### III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ determines credibility, resolves conflicts in medical testimony, and resolves any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of

the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id.*

## IV. DISCUSSION

### A.    Plaintiff's medically determinable severe impairments

Plaintiff argues at step-two the ALJ erred by failing to find "organic mental disorder" to be a severe impairment. Dkt. 19 at 6. At step two, plaintiff must show (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). As plaintiff has not pointed to anything in the record showing he has been diagnosed with "organic mental disorder," he has failed to meet his burden of showing that he has the medically determinable severe impairment of "organic mental disorder." The ALJ's step two analysis is supported by substantial evidence and should be affirmed.

### B.    Evaluation of medical opinions

#### 1.    Dr. Susan Hakeman, M.D.

Plaintiff argues the ALJ erroneously rejected Dr. Hakeman's 2003 and 2008 opinions. Dkt 15 at 9-10; Dkt. 20 at 5-8. In July 2003, Dr. Hakeman prepared a report that plaintiff had depression, possible bipolar disorder, panic disorder and polysubstance abuse in remission. Tr. 23. The ALJ found Dr. Hakeman's report not supported by clinical findings. *Id.* This finding is contrary to the record. Dr. Hakeman noted under the clinical findings section of her report, that plaintiff had depressed mood, made verbal expressions of anxiety or fear, had social withdrawal, motor agitation, paranoid behavior, hyperactivity, physical complaints and marked global illness. Tr. 424. As part of her clinical findings, Dr. Hakeman also added personal observations. To

"Verbal expression of anxiety or fear," she added "worry, panic." To "paranoid behavior" she added "thinks others speak of him." And to "Physical complaints" she added "Arm – surgery to remove wire, ↑ infection." *Id.* The record clearly shows Dr. Hakeman made clinical findings in her report and that the ALJ erred in finding that her report was not supported by such findings.

The ALJ also stated that "earlier treatment records of another doctor showed plaintiff "had good mental status functioning (exhibit 13F:6)." Tr. 23. The Commissioner contends this is a specific and sufficient reason for the ALJ to reject Dr. Hakeman's opinions. Dkt. 19 at 11. The contention is not supported by the record. Exhibit 13F:6 is a "progress record" of March 5, 2003 from North Sound Family Medicine. Tr. 402 It notes plaintiff's mental status as "Nl orientation to time, place and person. Recent and remote memory nl. Mood and affect. Nl." *Id.* But consistent with Dr. Hakeman's clinical findings, it also states that plaintiff was "[f]eeling depressed. [Had] lowered mood, interest in usual activities, energy level, concentration and appetite. Psychomotor agitation and retardation. Poor sleep. No suicide ideation. Anxious." *Id.*

Moreover, plaintiff's mental health problems are repeatedly noted in his North Sound Family Medicine records: "major depression" (Tr. 409); "anxiety/panic attack/adjustment disorder/anxious mood" (Tr. 408); "fatigue x7 days" (Tr. 404); "major depression" (Tr. 400); and "anxiety, depression" (Tr. 393). Accordingly, the findings in the earlier treatment records are not specific and sufficient reasons for the ALJ to reject Dr. Hakeman's 2003 opinions.

The ALJ also found Dr. Hakeman's 2008 "functional evaluation not sufficiently supported to be reliable." Tr. 24. In that evaluation Dr. Hakeman found plaintiff's "mood disorder NOS, bipolar v. unipolar, anxiety, and heroin dependence . . . caused moderate to marked cognitive and social limitations (exhibit 43F)." The ALJ noted Dr. Hakeman used a "check-box form" and that the "check-box form was not supported by a reference to clinical

findings." Tr. 23. However, this is at odds with the ALJ's statement that:

> Dr. Hakeman provided a progress note that appears to be a mental status examination or observation (exhibit 43F:5). There, the claimant presented as very restless and with poor fund of knowledge. His mental status was otherwise intact but he seems to have some concentration and recall errors (exhibit 43:5), typical of limitation to simple tasks. Dr. Hakeman noted the claimant's history of substance abuse, but was not informative in assessing its affect on the claimants functioning (exhibit 43F:2-3).

*Id.* In the progress note, Dr. Hakeman reported that plaintiff moved "constantly throughout the session. One of the top 2% of physical motion I have seen;" that plaintiff had an "angry" mood and "limited" affect range; that plaintiff had problems performing tests on recall, word sequencing, serial sequencing (counting by seven); and naming the states that bordered Washington. Tr. 722. Dr. Hakeman also made numerous notations about plaintiff's social limitations outside of the check-box form. She noted plaintiff's history of anxiety, that it was hard for him to be in public and that he leaves public settings. Tr. 718- 720.

   The Commissioner also argues the ALJ properly rejected Dr. Hakeman's opinions on the grounds the doctor did not adequately assess the effect of substance abuse on plaintiff's functioning, and the opinions were thus "not informative." Dkt. 19 at 11. The problem with this argument is in social security cases, "the ALJ has a special duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). If the ALJ thought he needed to know more about the basis of Dr. Hakeman's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry by calling the doctor to testify or by submitting questions. *See Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996). Accordingly, the Court finds the ALJ rejected Dr. Hakeman's opinions without giving specific and legitimate reasons.

1        **2.     Dr. Ellen Lind, Ph.D.**

2        Plaintiff argues the ALJ erred by incorrectly evaluating Dr. Lind's findings about his

3  social and cognitive limitations, and  by failing "to mention or give any reason to reject the

4  doctor's opinion that plaintiff's anxiety-related disorder met or equals severity listing 12.06."

5  Dkt. 15 at 11-12; Dkt. 20 at 5-8.  The Commissioner contends the ALJ did give proper reasons

6  for rejecting Dr. Lind's opinions by incorporating his 2006 evaluation of Dr. Lind into the

7  decision presently before the court.  In the 2006 decision the ALJ stated Dr. Lind's opinion was

8  "not well supported."  Tr. 39.

9        In the 2006 decision, the ALJ considered several reports from Dr. Lind.  Dr. Lind opined

10 that plaintiff was disabled and unable to work.  Tr. 657.  She also prepared Department of Social

11 Health and Services assessments in 2004 and 2006.  Tr. 643-650.  In the 2004 assessment, she

12 made the following clinical findings:  that plaintiff had depressed mood, lacks energy and

13 motivation, was socially isolated and had feelings of hopelessness; and that he had anxiety, panic

14 attacks and PTSD.  Tr. 644.  Dr. Lind reported plaintiff had "problems w/reading concentration.

15 Unable to read due to short-term memory focusing issues."  Tr. 645.  In the 2006 assessment, Dr.

16 Lind made similar clinical findings noting that plaintiff was "sad all the time, low energy,

17 hopelessness, unable to focus, suicidal feelings but no attempts"  Tr. 648.  She noted plaintiff

18 was socially withdrawn, "stays at home most of the time, has few friends" and "fears when

19 riding the bus."  Tr. 649-50.

20       In the 2006 decision, the ALJ found that the "symptoms of [plaintiff's] anxiety disorder

21 include motor tension, apprehensive expectation, and vigilance and scanning.  He has recurrent

22 and intrusive recollections of a traumatic experience, which is a source of marked distress

23 (Exhibit 38F).  He experiences high levels of anxiety and panic attacks when situational stress

arises. He lacks energy and motivation and has feelings of hopelessness (exhibit 36F)." Tr. 37. Despite making these findings, the ALJ found Dr. Lind's opinions "not well supported." Tr. 39.

The Commissioner defends the ALJ's finding stating "the ALJ pointed out that Plaintiff could cook, handle money, take public transportation, read, and watch television six hours a day." Dkt. 19 at 12. However, these activities are not incongruous with plaintiff's alleged impairments. There is a considerable difference between a person's ability to engage in some daily activities and being able to work full time five days a week. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Hence, the fact that plaintiff can watch T.V., make meals for himself, or take the bus does not show that he can work eight hours a day, five days a week doing past work as a clothing presser for a dry cleaner. Accordingly, the Court finds the ALJ rejected Dr. Lind's opinions without giving specific and legitimate reasons.

### 3. Dr. Anita Peterson, Ph.D.

Dr. Anita Peterson, Ph.D., an examining psychologist, prepared disability and residual functional capacity assessments. Tr. 377- 94. The ALJ found Dr. Peterson's assessments consistent with the evidence and gave them great weight. Tr. at 23. Plaintiff argues the ALJ erred in doing so because Dr. Peterson failed to consider plaintiff's anxiety disorder. Dkt. 20 at 2-5. Dr. Peterson did not consider anxiety disorder because she did not find plaintiff suffered from the disorder. Tr. 377. This is, or course, inconsistent with the ALJ's own determination that plaintiff suffers from anxiety disorder. Tr. 20. As such, the great weight the ALJ gave to Dr. Peterson's disability assessment is not supported by the substantial evidence.

Plaintiff also argues the ALJ erred by failing to incorporate into his RFC assessment, Dr. Peterson's opinion that plaintiff has the RFC to "manage simple, repetitive tasks away from the public, **without close** supervision." Tr. 394 (emphasis added). This argument will be addressed

in the residual functional capacity discussion below.

### 4.    Debby Jemeyson, BSW

Plaintiff argues the ALJ failed to give legitimate reasons to disregard Ms. Jemeyson's opinions.  The ALJ noted that Ms. Jemeyson, a counselor at plaintiff's methadone treating source, prepared a functional assessment in 2008 opining that plaintiff had PTSD with significant social limitations "consistent with listing-level conditions and disability (exhibit 48F)."  Tr. 24. The ALJ stated Ms. Jemeyson is not an acceptable medical source but that her comments would be considered.  *Id.*.  The ALJ discounted Ms. Jemeyson's opinions because they were based on "subjective statements" and because she referred to particular counseling dates and the notes from those sessions were not available for review.  *Id.*

Although Ms. Jeymeson is not an acceptable medical source, her opinion nevertheless constituted competent evidence to show the severity of plaintiff's mental impairment; the ALJ was therefore required to consider her opinions under the Commissioner's regulations. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(1)(c). To discredit Ms. Jeymeson's opinion, the ALJ must provide "germane" reasons. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993).

Here, as the basis for her conclusion that plaintiff was disabled, Ms. Jeymeson wrote:

> Mr. Harris met with this writer regularly from the time he entered treatment until he was discharge[d], 8/10/05-2/5/07. Throughout this period, Mr. Harris continually struggled with SXs of depression and anxiety which affected his daily living. Mr. Harris regularly cycled through periods of severe depression, sometimes every-other-week to every month, and was required to be engaged in regular mental health appointments as a condition [of] treatment at Island Crossing Counseling Services. However, he had difficulty accomplishing this and was frequently out of mental health medication as well as lacking therapeutic counseling. Mr. Harris was reclusive and guarded from most of society, with the exception of a view individuals he trusted. Additionally, he was known to isolate himself in his camper trailer especially during the

periods his mental health/depression deteriorated. I believe Mr. Harris was continually plagued with grief, primarily loss of family or relationships, like a wound he tried to forget hurt. Mr. Harris demonstrated that he lives in a constant state of paranoia, so much so it could be considered a personality trait. I cannot recall a time when Mr. Harris demonstrated that he felt safe; frequently, he articulated concern that someone, or some fate, was going [to] prevent his best interest. I can clearly recall a number of times he would say, "It's just my luck," or "Why are people out to get me?". Mr. Harris frequently demonstrated deficiencies in his ability to concentrate, AEB: failing to arrange or attend scheduled appointments, forgetting to pay rent, jumping from one topic to another in conversations, and regularly demonstrating anxiety by continual fidgeting or inability to sit still. There were a number of times I met with Mr. Harris and he reported not being able to sleep. The only times I recall when he didn't have insomnia was when he had Seroquel, but he believed it cause side effects. The following are some of the discussions and date that supports the above.

Tr. 48F:6. Ms. Jemeyson's opinion is based on regular meetings spanning a year and a half. Her opinions about plaintiff's mental health and functioning depression are, as she describes, based on her observations and actual events such as failing to appear for appointments. The reason the ALJ gave for rejecting her opinion – that it is based on "subjective statements" – is not supported by substantial evidence.

The conclusion that Ms. Jeymeson's opinion should be rejected because her notes are not available for review is also not a germane reason to reject the opinion. It is clear that Ms. Jeymeson had referred to treatment notes to prepare her explanation of why she believed plaintiff was disabled. She referred to them at the end of her opinion and then listed the dates of the notes upon which she relied in forming her opinion. Tr. 48F:6-7. As discussed previously, the ALJ has a special duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). There is no indication that the ALJ requested the notes or that they were refused. If the notes were crucial to the ALJ's evaluation of Ms. Jeymeson's opinion, he had a duty to conduct an appropriate inquiry such as

subpoenaing them.  In sum, the Court finds the ALJ rejected Ms. Jeymeson's opinions without giving germane reasons.

## C.     Failure to comply with Appeals Council's order

Plaintiff contends the ALJ erred by failing, as directed by the Appeals Council, to: 1) obtain updated psychological or physical evaluations, and 2) compare plaintiff's residual functional capacity with the demands of his past work.  Dkt. 15 at 13, 15-16.  Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision.  By failing to remand the matter a second time, it appears that the Appeals Council considered the ALJ's decision to be in compliance with the Council's previous order of remand.  Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process.  *See* 42 U.S.C. § 405(g).  *See also Dishman v. Astrue*, 2009 WL 2823653 at *10 (E.D. Tennessee, Aug. 27, 2009).

## D.     Plaintiff's residual functional capacity and the "without close supervision" limitation

Plaintiff argues that the ALJ erred in assessing plaintiff's residual functional capacity because the ALJ failed to include the need for plaintiff to work without close supervision.

A claimant's residual functional capacity "is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p (emphasis omitted); *see also* 20 C.F.R. § 404.1545.  The ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the case record, including medical source statements.  SSR 96-8p.  An ALJ must evaluate the findings of a non-examining state agency medical consultant in the same manner as other opinion evidence, and

1    must explain the weight given to such opinions. 20 C.F.R. § 404.1527(f)(2).

2        Plaintiff first argues the ALJ erred by failing to incorporate Dr. Peterson's opinion into

3    his RFC assessment. The Court agrees. Dr. Peterson opined that plaintiff "is capable of SRT

4    [simple repetitive tasks] away from public, without close supervision. He may not maintain

5    regular attendance, but there is a volitional component to his behavior." Tr. 394.

6        In evaluating plaintiff's residual functional capacity, the ALJ stated that Dr. Peterson's

7    reports are consistent with the evidence and that her conclusions are "given great weight." Tr.

8    23. But the ALJ's residual functional capacity finding did not include as a limitation

9    employment without close supervision. Rather, it stated plaintiff could work 8 hours a day, five

10   days a week and could "make judgments commensurate with the functions of unskilled work,

11   such as . . . and responding appropriately to supervision, co-workers and work situations and

12   dealing with work changes within a routine work setting." Tr. 22. The ALJ's residual functional

13   capacity assessment thus conflicts with Dr. Peterson's opinion, an opinion the ALJ gave great

14   weight.

15       The Commissioner argues the ALJ "did not adopt Dr. Peterson's limitation of working

16   "without close supervision" but instead found plaintiff capable of responding appropriately to

17   supervision, co-workers and work situations." Dkt. 19 at 14. However, the ALJ did not state he

18   was rejecting Dr. Peterson's opinion that plaintiff needed to work without close supervision.

19   Rather he stated:

20           Dr. Peterson concluded that the claimant could manage simple repetitive
             tasks away from the public, without close supervision (exhibit 11F).
21           These reports are consistent with the evidence (Exhibit 11F:3). The
             conclusions of Dr. Peterson are given great weight.

22

23   Tr. 23. The Court finds nothing in the ALJ's decision that supports the Commissioner's

argument. Additionally, the Court cannot properly assume the ALJ rejected parts of Dr.

Peterson's opinions because an ALJ may not reject portions of the opinion without explanation.

*See* 20 C.F.R. § 404.1527(f)(2). Accordingly, the Court concludes the omission of plaintiff's

need to work without close supervision from the RFC assessment was erroneous.

**E.     Harm of failure to include the "without close supervision" limitation**

Plaintiff argues the ALJ's failure to include the "without close supervision" limitation

was not harmless and resulted in the vocational expert giving an opinion based on an incomplete

hypothetical. Dkt. 20 at 12. The Commissioner argues the ALJ's conclusion that plaintiff could

perform his past work as a dry cleaner machine presser properly took into account all of the

evidence in the record and was supported by the vocational expert's opinion. Dt. 19 at 18-20.

An ALJ posing a hypothetical question to a vocational expert "must set out all the

limitations and restrictions of a particular claimant." *Magallanes v. Bowen*, 881 F.2d 747, 756

(9th Cir. 1989). An ALJ "need not include all claimed impairments in his hypotheticals [but] he

must make specific findings explaining his rationale for disbelieving any of the claimant's

subjective complaints not included in his hypothetical." *Ilight v. Social Sec. Admin.*, 119 F.3d

789, 793 (9th Cir. 1997). If the assumptions in the hypothetical are not supported by the record,

or do not reflect all of the claimant's limitations, the opinion of the vocational expert that

claimant has a residual functional capacity has no evidentiary value. *Gallant v. Heckler,* 753

F.2d 1450, 1456 (9th Cir. 1984); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

Here, vocational expert Roni Beall testified at the hearing before the ALJ. Tr. 816. Ms.

Beall testified that she understood plaintiff had worked as a dryclean/presser, DOT 362.382-014,

under the supervision of his grandfather. Tr. 841-2. The ALJ asked Ms. Beall to identify jobs

plaintiff could perform using a hypothetical question requiring her to assume plaintiff "can

respond appropriately to supervisors, coworkers, and usual work situations and deal with changes in a routine work setting not dealing with the general public." Tr. 841-2. The expert identified security guard and production and packaging type jobs. Tr. 843.

Plaintiff's counsel then asked Ms. Beall:

> [w]ith regard to the same hypothetical asked by His Honor, if we consider certain social factors, and by that I mean that hypothetical person was markedly impaired in their ability to relate appropriately to coworkers and supervisors, what affect would that have?"

Tr. 846. Ms. Beall answered: "That would be very problematic. It would eliminate those jobs." *Id.* Ms. Beall also indicated that plaintiff's anxiety, panic attacks, social isolation and jerky movements would be unacceptable to an employer if those behaviors were significant enough to distract other employees. Tr. 846-47.

The ALJ's hypothetical failed to include limitations noted by Dr. Peterson's functional assessment, an assessment that the ALJ gave great weight. In her assessment, Dr. Peterson noted plaintiff's claim that he suffered from depression, anxiety, agoraphobia, paranoia, and hypervigilance. Tr 393. Although Dr. Peterson questioned plaintiff's credibility, she stated "Dr. buys his story." *Id.* Based on this, Dr. Peterson concluded plaintiff could work but "away from public, without close supervision." Tr. 394. However, apart from the limit of "not dealing with the general public," the ALJ included none of Dr. Peterson's limitations. In fact, the hypothetical assumed an individual who could respond appropriately to supervisors, coworkers, and usual work situations and deal with changes in a routine work setting, an assumption that is not supported by Dr. Peterson's assessment or the assessment of any other doctor. Accordingly, the Court concludes the ALJ's determination that plaintiff has the residual functional capacity to perform his past work as a dry cleaner machine presser is not supported by substantial evidence.

1    The Court therefore recommends the case be remanded for further proceedings. On

2    remand, the ALJ should include in his RFC assessment the limitations set forth by Dr. Peterson.

3    The ALJ should obtain additional vocational testimony to determine whether there are dry

4    cleaner machine presser jobs that plaintiff can perform in view of all of his limitation and if not

5    whether there exists in significant numbers in the national economy a job that plaintiff can

6    perform.

7                                    **V.  CONCLUSION**

8         For the foregoing reasons, the Court recommends that this case be **REVERSED** and

9    **REMANDED** for further proceedings consistent with this Report and Recommendation.  A

10   proposed order accompanies this Report and Recommendation.

11        DATED this 16th day of February, 2010.

12

13

14                              _____
                               BRIAN A. TSUCHIDA
                               United States Magistrate Judge

15

16

17

18

19

20

21

22

23